IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NICK BORST,

            Plaintiff,

v.                                                       Case No. 20-2441-JWB

HONEYCOCOON D/B/A HONEYCOCOON SHOES
and JOHN DOE CORP. 1 and 2,

            Defendants.

**MEMORANDUM AND ORDER**

This matter comes before the court on Plaintiff's motion for default judgment against Defendant HoneyCocoon Shoes (Doc. 11). For the reasons set forth herein, Plaintiff's motion is GRANTED IN PART and TAKEN UNDER ADVISEMENT IN PART.

**I.  Background**

Plaintiff Nick Borst is a Kansas citizen. On August 17, 2018, Plaintiff visited the website of www.honeycocoon.co, which is owned and operated by Defendant HoneyCocoon. Defendant is a Canadian corporation with its principal place of business in Montreal, Québec, Canada, and also does business in the state of Kansas. (Doc. 1 at ¶¶ 2, 7.) While reviewing Defendant's website, Plaintiff saw an advertisement for the Indestructible Bulletproof Ultra X Protection Shoes (the "shoes"). It advertised that "nails won't be able to breach through the shoe" and that the shoes protect "your toes with the steel toe cap." (*Id.* at ¶ 8.) Relying on these advertisements on Defendant's website, Plaintiff purchased the shoes for $79.99. The shoes were designed, distributed, manufactured, and/or marketed by Defendant who then shipped the shoes to Plaintiff. Plaintiff wore the shoes between late August 2018 and September 11, 2018.

On September 11, 2018, Plaintiff inadvertently stepped on a 1 1/2 inch nail protruding from a piece of wood. The nail punctured through the bottom of the "Indestructible Shoes and impaled Plaintiff's second toe on his left foot." (*Id.* at ¶ 15.) Plaintiff self-treated his toe after receiving medical advice from his sister who is a doctor. After his condition did not improve, he saw Dr. Jones on September 27, 2018. At that appointment, Plaintiff was diagnosed with septic arthritis of his left foot. The following day, Plaintiff underwent an irrigation and debridement procedure at Stormont-Vail Medical Center in Topeka, Kansas. He then returned for further wound care, and was required to undergo occupational and physical therapy. (Doc. 11 ¶¶ 19-21.) As a result, Plaintiff incurred $23,239.16 in billed medical expenses. Plaintiff also missed work for approximately one month because he was unable to put weight on his foot after the surgery. Plaintiff seeks at least $2,880.00 in lost income due to his injury. (*Id.* at ¶ 24.) Plaintiff also moved in with his sister so that she could assist him in daily living activities. According to Plaintiff's affidavit, his injury caused him substantial pain and his toe continues to ache at times. (Doc. 11-1.)

Plaintiff filed this suit against Defendant and two John Doe Corporations on September 10, 2020. (Doc. 1.) Plaintiff alleges claims of strict liability, failure to warn, negligent and fraudulent misrepresentation, and violation of the Kansas Consumer Protection Act. Plaintiff alleges that the product was in a defective condition at the time of the sale and that he suffered the injury to his toe as a result of the defective condition of the shoes. (Doc. 1 ¶¶ 22-24.) Plaintiff further alleges that Defendant failed to warn Plaintiff that a nail could penetrate the bottom of the shoes. (*Id.* at ¶ at 29.) Plaintiff seeks his actual damages, compensatory damages, and punitive damages.

After filing this action, Plaintiff's counsel sent Defendant a request that it waive service of summons pursuant to Federal Rule of Civil Procedure 4(d). Plaintiff's counsel did not receive a

response.  Plaintiff's counsel then retained Civil Action Group d/b/a APS International, Ltd. ("APS") to procure service upon Defendant.  The court granted Plaintiff an extension to serve Defendant after finding that Plaintiff was making a good faith effort to effect service under the Hague Service Convention.  (Doc. 5.)  Plaintiff was allowed until December 31, 2021, to serve Defendant.

Prior to serving Defendant, APS translated the pleadings from English to French because Montreal is a French-speaking city.  On October 12, 2021, Gianna Aquilino, a bailiff of justice, served Diane Giancioppi, a receptionist at Defendant's business center who was authorized to accept service of process.  (Doc. 6 at 2.)  Defendant's answer was then due on November 2, 2021.  Defendant failed to timely answer.  On January 26, 2022, Plaintiff obtained a clerk's entry of default against Defendant.  (Doc. 10.)

Plaintiff now moves for default judgment against Defendant.  Plaintiff seeks a hearing to present evidence regarding his injuries and damages or, in the alternative, judgment in his favor in the amount of $250,000 and costs taxed against Defendant.  (Doc. 11 at 8.)

**II.     Analysis**

Default judgment may be entered against a party who fails to appear or otherwise defend. Fed. R. Civ. P. 55.  Plaintiffs must first seek an entry of default from the clerk and then move for default judgment with the court.  *Id.*  The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (quoting *Dennis Garberg & Assocs. V. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997)).  Because Defendant failed to answer, plead, or otherwise defend this action, it is deemed to have admitted the factual allegations of the complaint as true.  *Id.* at 1125.  A court may enter a default judgment without a hearing if the amount claimed is a liquidated sum or one capable of

mathematical calculation. *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983); *Hermeris, Inc. v. McBrien*, No. 10-2483-JAR, 2012 WL 1091581, at *1 (D. Kan. Mar. 30, 2012) ("Damages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts.") (citation omitted).

Before entering default judgment against Defendant, the court also has an affirmative duty to look into its jurisdiction over the parties. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986); *see also Hukill v. Okla. Native Am. Domestic Violence Coalition*, 542 F.3d 794, 797 (10th Cir. 2008) ("[A] default judgment in a civil case is void if there is no personal jurisdiction over the defendant."). In this case, the court finds that Plaintiff has properly served Defendant by leaving the summons at Defendant's business with an individual who could accept service. *See Signify N. Am. Corp. v. Axis Lighting Inc.*, No. 19CV5516 (DLC), 2019 WL 4994288, at *1–2 (S.D.N.Y. Oct. 8, 2019) (discussing personal service requirements under the Hauge Convention in the province of Québec). The court further finds that Plaintiff's allegations regarding Defendant's actions in conducting business in Kansas and selling products to Kansas citizens is sufficient to establish this court's jurisdiction over Defendant. Also, the court has subject matter jurisdiction over this case because Defendant is a foreign citizen and Plaintiff is a citizen of Kansas. 28 U.S.C. § 1332.

Turning to the merits, once default is entered Defendant is not entitled to defend itself on the merits and the court must determine whether Plaintiff's allegations, which are taken as true, state a claim against Defendant. *See, e.g., Kalinich v. Grindlay*, No. 14-1120-SCA, 2014 WL 3740439, at *1 (D. Kan. July 30, 2014). If there is a sufficient basis for default judgment, that judgment establishes only liability. *See, e.g., Hermeris, Inc.*, 2012 WL 1091581, at *1.

Turing to the allegations, Plaintiff has stated claims of strict liability, failure to warn, negligent and fraudulent misrepresentation, and violation of the Kansas Consumer Protection Act ("KCPA"), K.S.A. 50-626.  Under Kansas law, Plaintiff's claims of strict liability, failure to warn, and negligent and fraudulent misrepresentation all merge into one claim under the Kansas Product Liability Act ("KPLA"), K.S.A. 60-3302(c).  *Pedro v. Armour Swift-Eckrich*, 118 F. Supp. 2d 1155, 1158–59 (D. Kan. 2000) (citing *Fennesy v. LBI Mgmt., Inc.*, 18 Kan. App. 2d 61, 65–66, 847 P.2d 1350, 1355 (1993)); *Mattos v. Eli Lilly & Co.*, No. 12-1014-JWL, 2012 WL 1893551, at *3 (D. Kan. May 23, 2012).  Plaintiff also has a claim under the KCPA.  That claim does not merge under the KPLA, but may proceed as a separate claim under Kansas law.  *Cooper v. Zimmer Holdings, Inc.*, 320 F. Supp. 2d 1154, 1164 (D. Kan. 2004); *Schehrer v. Smith & Nephew, Inc.*, No. 19-2003-JWL, 2019 WL 1002419, at *4 (D. Kan. Mar. 1, 2019).

"To establish a prima facie case based on negligence or strict liability in a products liability case, a plaintiff must produce evidence to establish three elements: (1) the injury resulted from a condition of the product; (2) the condition was an unreasonably dangerous one; and (3) the condition existed at the time it left defendant's control."  *Messer v. Amway Corp.*, 210 F. Supp. 2d 1217, 1227 (D. Kan. 2002), *aff'd*, 106 F. App'x 678 (10th Cir. 2004) (citing *Jenkins v. Amchem Prods., Inc.*, 256 Kan. 602, 886 P.2d 869, 886 (1994)).  Reviewing Plaintiff's factual allegations, which have been admitted, the court finds that Plaintiff has sufficiently established his claim under the KPLA and he is entitled to judgment on the liability issues on this claim.

Next, Plaintiff brings a claim under the KCPA due to the false representation that nails could not penetrate the shoes and a consumer's toes would be protected by the shoes.  (Doc. 1 at ¶ 57.)  To state a claim under the KCPA, Plaintiff must show that he is a consumer and Defendant is a supplier under the KCPA, that they were involved in a consumer transaction, that Plaintiff is

5

aggrieved by Defendant's alleged violation, and that Defendant's actions were deceptive or unconscionable. *Holman v. Fifth Third Bank, N.A.*, No. 21-CV-02247-EFM-TJJ, 2021 WL 5578549, at *4 (D. Kan. Nov. 30, 2021) (citing *Via Christi Reg'l Med. Ctr., Inc. v. Reed*, 298 Kan. 503, 314 P.3d 852, 863 (2013)). Here, Plaintiff has sufficiently alleged that he is a consumer and Defendant is a supplier and that a consumer transaction occurred with respect to the purchase of the shoes. Moreover, under the KCPA, a deceptive act includes "the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact." K.S.A. 50-626 (b)(2). Plaintiff's complaint establishes that Defendant committed a deceptive act by making false statements regarding the shoes. Further, Plaintiff has established that he has been aggrieved by this violation. Therefore, Plaintiff is entitled to judgment on the liability issues with respect to his claim under the KCPA.

With respect to damages, the complaint alleges that Plaintiff suffered damages as a result of Defendant's conduct, but those allegations are not taken as true. *Kalinich*, 2014 WL 3740439, at *1. Rather, "[d]amages may be awarded only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1275 (D. Kan. 2016). When damages claimed by Plaintiff are capable of mathematical calculation, Rule 55(b)(2) "does not require that the district court receive evidence on the claimed damages amount before entering a default judgment; rather, the Rule simply allows the district court to conduct a hearing if it believes that additional investigation or evidence is necessary." *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1172 (10th Cir. 2011) (citing Fed. R. Civ. P. 55(b)(2) (noting that the district court "may conduct hearings")).

In this case, Plaintiff has submitted an affidavit in support of his damages. Plaintiff seeks damages for medical expenses, lost wages, and $250,000 in compensatory damages for pain and suffering. (Doc. 11.) Plaintiff requests either a hearing or an order grating him the damages that he seeks. Because Plaintiff's damages include pain and suffering in addition to his physical injuries, the court finds that the affidavit is insufficient to establish the proof necessary for an award of compensatory damages. Therefore, an evidentiary hearing should be held to enable the court to determine the amount of Plaintiff's compensatory damages in this case.

### III. Conclusion

Plaintiff's motion for default judgment (Doc. 11) is GRANTED IN PART and TAKEN UNDER ADVISEMENT IN PART. Plaintiff is granted default judgment against Defendant on the liability issue of his KPLA and KCPA claims. An evidentiary hearing will be conducted on March 30, 2022, at 1:30 p.m. on the amount of compensatory damages Plaintiff is entitled to as a result of his claim.

IT IS SO ORDERED. Dated this 16th day of February 2022.

       s/ John W. Broomes
       JOHN W. BROOMES
       UNITED STATES DISTRICT JUDGE