IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NICK BORST,

      Plaintiff,

v.                   Case No.  20-2441-JWB

HONEYCOCOON D/B/A HONEYCOCOON SHOES
and JOHN DOE CORP. 1 and 2,

      Defendants.

**MEMORANDUM AND ORDER**

This matter comes before the court on Plaintiff's motion for default judgment against Defendant HoneyCocoon Shoes (Doc. 11).  On February 16, 2022, the court granted Plaintiff's motion in part on the issue of liability, but found that it did not have sufficient evidence before it to issue a default judgment against Defendant for the compensatory damages requested.  (Doc. 12.)  The court held an evidentiary hearing on March 30, 2022 on the issue of damages.  Plaintiff Nick Borst testified at the hearing.  Defendant did not appear.  For the reasons set forth herein, Plaintiff's motion for default judgment is GRANTED.

**I.**  **Background and Procedural History**

The facts stated herein are taken from the complaint and the evidence introduced at the hearing.  On August 17, 2018, Plaintiff Nick Borst visited the website of www.honeycocoon.co, which is owned and operated by Defendant HoneyCocoon.  Plaintiff was a Kansas citizen during the events that gave rise to this action and at the time of filing.  Defendant is a Canadian corporation with its principal place of business in Montreal, Quebec, Canada, and also does business in the state of Kansas.  (Doc. 1 at ¶¶ 2, 7.)  While reviewing Defendant's website, Plaintiff saw an advertisement for the Indestructible Bulletproof Ultra X Protection Shoes (the "shoes").  It

1

advertised that "nails won't be able to breach through the shoe" and that the shoes protect "your toes with the steel toe cap." (*Id.* at ¶ 8.) Relying on these advertisements on Defendant's website, Plaintiff purchased the shoes. Plaintiff testified that he purchased the shoes because of his work in the construction business and wanted to protect his feet from nails at the worksite. The shoes were designed, distributed, manufactured, and/or marketed by Defendant who then shipped the shoes to Plaintiff. Plaintiff wore the shoes between late August 2018 and September 11, 2018.

On September 11, 2018, Plaintiff inadvertently stepped on a 1 1/2 inch nail protruding from a piece of wood. The nail punctured through the bottom of the "Indestructible Shoes and impaled Plaintiff's second toe on his left foot." (*Id.* at ¶ 15.) Plaintiff self-treated his toe after receiving medical advice from his sister who is a doctor. Plaintiff testified that he could not work due to his injury and went to stay with his sister. He did not have medical insurance at the time. After his condition failed to improve, Plaintiff saw Dr. Clifton Jones on September 27, 2018. At that appointment, Plaintiff was diagnosed with septic arthritis of his left foot. The following day, Plaintiff underwent an irrigation and debridement procedure at Stormont-Vail Medical Center in Topeka, Kansas. During the procedure, a drain was placed inside Plaintiff's foot. (Hrg. Exhs. 6, 7.) He then returned for further wound care and was required to undergo occupational and physical therapy. (Doc. 11 ¶¶ 19-21.) Plaintiff testified that he suffered excruciating pain during removal of the drain in his foot and subsequent wound care. A PICC line was placed in Plaintiff's arm and he returned to the hospital for several days to receive intravenous antibiotics. Plaintiff was also required to wear a boot on his foot for several weeks. The healing process was slow and Plaintiff was confined to his bed for some time. He took prescription medication to deal with the pain. At the end of October, Plaintiff returned to work and his own residence.

Plaintiff testified regarding his damages at the hearing. Plaintiff incurred $23,239.16 in billed medical expenses for his surgery and related treatment. Plaintiff also missed work for approximately one month because he was unable to put weight on his foot after the surgery. Plaintiff seeks at least $2,880.00 in lost income due to his injury. (*Id.* at ¶ 24.) According to Plaintiff's testimony, his injury caused him substantial pain and his toe continues to ache at times. Plaintiff testified that he is unable to play softball, which he used to enjoy, and unable to run. He also has a lack of mobility on his second toe.

Plaintiff filed this suit against Defendant and two John Doe Corporations on September 10, 2020. (Doc. 1.) Plaintiff alleges claims of strict liability, failure to warn, negligent and fraudulent misrepresentation, and violation of the Kansas Consumer Protection Act. Plaintiff alleges that the product was in a defective condition at the time of the sale and that he suffered the injury to his toe as a result of the defective condition of the shoes. (Doc. 1 ¶¶ 22-24.) Plaintiff further alleges that Defendant failed to warn Plaintiff that a nail could penetrate the bottom of the shoes. (*Id.* at ¶ at 29.)

As stated in this court's previous order, Plaintiff served Defendant on October 12, 2021. (Doc. 12.) Defendant then failed to answer. On January 26, 2022, Plaintiff obtained a clerk's entry of default against Defendant. (Doc. 10.) Plaintiff then moved for a default judgment. (Doc. 11.) The court granted the motion in part, finding that it had sufficient evidence to determine that Plaintiff had established liability against Defendant on his claims under the Kansas Consumer Protection Act ("KCPA"), K.S.A. 50-626, and the Kansas Product Liability Act ("KPLA"), K.S.A. 60-3302(c). Plaintiff seeks damages for his medical expenses, lost wages, and pain and suffering, in the total amount of $250,000.

3

**II.     Analysis**

Damages may be awarded on a motion for default judgment "only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1275 (D. Kan. 2016). *See also* Fed. R. Civ. P. 55(b)(2). Both of Plaintiff's claims entitle him to damages under Kansas law. Under the KPLA, a party may seek damages for harm including personal injury and mental anguish or emotional harm attendant to such personal injury. K.S.A. 60–3302(d). Therefore, Plaintiff's damages of medical expenses, lost wages, and pain and suffering are recoverable under the KPLA. *See Mattos v. Eli Lilly & Co.*, No. 12-1014-JWL, 2012 WL 1893551, at *3 (D. Kan. May 23, 2012) (discussing that personal injury and lost wages are available as damages under the KPLA). Under the KCPA, Plaintiff may recover actual damages or a civil penalty. K.S.A. 50-634 (b). Here, Plaintiff is seeking actual damages. (Doc. 1 at 10.) The KCPA also permits attorney's fees. *See* K.S.A. 50-634; *Kelly v. VinZant*, 287 Kan. 509, 524-25, 197 P.3d 803 (2008) (discussing damages under the KCPA).

Plaintiff testified regarding his damages and expenses. The court finds Plaintiff's testimony credible. Exhibits pertaining to Plaintiff's damages were also entered into the record. After review of the evidence, the court finds that Plaintiff is entitled to $23,239.16 in medical expenses incurred due to his injury and as a result of Defendant's actions. (Hrg. Exhs. 8, 9, 10, 11.) Plaintiff is also entitled to an award of $2,880 for lost wages.

Plaintiff also seeks damages for pain and suffering in an amount that would yield a total damage award of $250,000. An award of damages for pain and suffering is measured as "such amount as reasonable persons estimate to be fair compensation" and must be "in harmony with the evidence and arrived at without passion or prejudice." *Kerns By & Through Kerns v. G.A.C., Inc.*,

4

255 Kan. 264, 277, 875 P.2d 949, 959 (1994).  The evidence shows that Plaintiff suffered from a physical injury as a result of Defendant's product.  The court has reviewed the exhibits which provide extensive detail of his injury and medical treatment.  Based on the testimony, Plaintiff's injury resulted in significant pain over a period of several weeks.  Moreover, Plaintiff continues to suffer pain on occasion due to his injury and scar tissue.  Plaintiff also has limited function of his second toe due to this injury and Plaintiff is unable to participate in activities that he previously enjoyed.

The court finds sufficient evidence supports an award of $200,000 in damages for Plaintiff's pain and suffering.

Finally, Plaintiff seeks an award for costs and expenses in serving Defendant.  Those are allowed under Rule 54(d).  Reviewing the affidavit in support of costs, Plaintiff's attorney paid $2,202.80 in costs to obtain service of process upon Defendant.  Those costs were paid to APS International, a company that specializes in obtaining service via the Hauge Convention.  A significant portion of the cost was the fee for APS to translate the pleadings from English to French which was required prior to service.  The court has reviewed Plaintiff's attorney's affidavit along with the exhibits which detail the costs.  The court finds that the costs are reasonable.  Therefore, the court awards Plaintiff $2,202.80 in costs for service and $400 for the filing fee.

**III.    Conclusion**

Plaintiff's motion for default judgment (Doc. 11) is GRANTED.  Plaintiff is granted default judgment against Defendant on his KPLA and KCPA claims.  The court awards Plaintiff $23,239.16 in medical expenses, $2,880 for lost wages, and $200,000 for pain and suffering.  Plaintiff is also awarded $2,602.80 in costs.

IT IS SO ORDERED. Dated this 1st day of April 2022.

                                                          s/John W. Broomes
                                                         JOHN W. BROOMES
                                                         UNITED STATES DISTRICT JUDGE